UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Criminal Action No. 05-cr-00141-MSK

UNITED STATES OF AMERICA,

        Plaintiff,

v.

1.    LEE ARTHUR THOMPSON, a/k/a "LT,"
2.    ALVIN HUTCHINSON, a/k/a "BIG AL,"
3.    JORGE BANUELOS,
4.    CECILIA LOZANO,
5.    DENISE GUTIERREZ,
6.    KENNETH PRIEN, a/k/a "KENNY,"
7.    RONALD DEAN DEHERRERA, a/k/a "DINO,"
8.    WILLIAM L. GLADNEY, a/k/a "L,"
9.    **STEVEN LAMONT ELLIS,**
10.   JUNIOR RAY MONTOYA, a/k/a "JR. RAY,"
11.   JESSICA CRUTHERS,
12.   PAUL ROSE, JR.,
13.   DAVID ZAMORA,
14.   STEVE ZAMORA, and
15.   MILTON A. YON,

        Defendants.

## ORDER DENYING DEFENDANT ELLIS' MOTION FOR RECONSIDERATION AND FOR NEW TRIAL

THIS MATTER comes before the Court on Defendant Ellis' Request for Reconsideration of His Suppression Motion and for New Trial **(#1043)**, to which the Government responded **(#1079)**. Mr. Ellis filed no reply. Having considered the same, the Court

**FINDS** and **CONCLUDES** that:

## I. Jurisdiction

The Court exercises subject matter jurisdiction pursuant to 18 U.S.C. § 3231.

## II. Introduction

The Second Superceding Indictment **(#477)** asserted two charges against Defendant Steven Lamont Ellis: conspiracy to distribute cocaine base (Count 3), and distribution, or possession with the intent to distribute, approximately 4.1 grams of cocaine base on or about July 16, 2004 (Count 6). A trial on these charges was held between December 11 and 15, 2006. The jury found Mr. Ellis not guilty on the conspiracy charge (Count 3), but found him guilty on the distribution charge (Count 6).

Mr. Ellis now moves for a new trial. He contends that new evidence revealed during the trial shows that the Court's pre-trial ruling on his suppression motion was erroneous, and that evidence of the cocaine base offered to prove the distribution charge should have been suppressed at trial. In specific, he contends that trial testimony from Officer Douglas Templeton with regard to a "continuation supplement report" shows that Mr. Ellis was transported to a police substation before Officer Templeton conducted a search of his apartment, and therefore, the search during which the cocaine was discovered was unlawful. Consequently, he seeks reconsideration of the suppression ruling and a new trial.

## III. Background

### A. The Suppression Motion and Ruling

Mr. Ellis moved **(#186)** to suppress evidence seized from Room 38 at the Alpine Rose Motel during a warrantless search which occurred on July 16, 2004. The evidence that was seized included cocaine and firearms.

The Court held an evidentiary hearing on this motion. At that hearing, the Court heard testimony from Officer Templeton of the Adams County Sheriff's Department. His testimony was unrebutted.

Officer Templeton testified as follows. Officer Templeton was standing in the doorway of Room 38 at the Alpine Rose Motel, and Mr. Ellis was standing just inside the room. Officer Templeton saw a plate containing a substance which he believed was crack cocaine, along with a razor blade. The plate was located on top of a desk a few feet from the door. Officer Templeton asked Mr. Ellis what the substance was, and Mr. Ellis replied that it was powder from powdered doughnuts. Officer Templeton did not believe Mr. Ellis, then asked him to step out onto the balcony. Officer Templeton arrested Mr. Ellis and placed him in handcuffs, then went into the apartment to search for other people. During that search, he saw an open desk drawer containing a firearm. He opened the drawer, and found a second firearm and cocaine.

On cross-examination, defense counsel inquired about a "continuation supplement report" which Officer Templeton prepared after he arrested Mr. Ellis. The continuation supplement report was not offered into evidence by either party, and Defense counsel did not ask any questions about the timing of events described in the report.

Based upon the evidence presented at the suppression hearing, the Court concluded that the search of the the desk drawer was lawful. The desk drawer was located three to four feet from the balcony where Mr. Ellis was standing and therefore was within Mr. Ellis' grab space. Therefore, the Court denied Mr. Ellis' request to suppress both the firearms and the cocaine base seized from the drawer.

**B. Allegedly Conflicting Evidence at Trial**

Mr. Ellis contends that conflicting evidence at trial requires reconsideration of his motion to suppress. The allegedly conflicting testimony given by Officer Templeton during cross-examination follows:

> Q. The deputy who responded to your call for assistance was Deputy Scott Perry; correct?
>
> A. Yes.
>
> Q. And it was Deputy Scott Perry who took Mr. Ellis and also Mr. Reinhardt to the police station; correct?
>
> A. Yes.
>
> Q. And the chronology of all these events are the – "chronology" meaning the order of things -- all are described in your continuation supplement report that we talked about; correct?
>
> A. Yes.

The second and third pages of the continuation supplement report contain a narrative of Officer Templeton's investigation, and state in relevant part:

> At 1315 hours Deputy Scott Perry and I parked our patrol vehicles in the parking lot and started to walk towards room #38. I saw a Hispanic male with no shirt identified as Raymond Reinhardt (dob [redacted]) walk into room #38 with nothing in his hands. The door shut behind Raymond Reinhardt.
>
> I knocked on door #38 approximatly 5 times as I was standing there waiting I observed a small tear in the window screen in the lower right corner of the window. A minute later the door open and Raymond Reinhardt walked out with a black male standing behind the open door identified as Steve Ellis (dob [redacted]). I asked Raymond Reinhardt if he lived in room #38. Raymond Reinhardt told me no that his friend did and looked at Steven Ellis. I looked in the room at Steven Ellis as he moved next towards the front of a wood desk to the north of the door jam,

4

there was a pair of black binoculars sitting on the window seal and the curtain and window closed. I saw a dinner plate laying on top of the wood desk with a single edge razor blade laying on top. There was a white powder substance laying in the plate scattered around the razor. I asked Steven Ellis if this was his room. Steven Ellis told me that he had checked in last night with his girlfriend. Steven Ellis told me that his girlfriend was at work and worked for Wendy's and had left this morning at a unknown time.

I asked Steven Ellis who's items were those that were sitting on the desk. Steven told me that he did not know. Steven Ellis then told me that Raymond Reinhardt must have brought the dinner plate in with him and he did know that Raymond Reinhardt was in the room because he was sleeping. I asked Steven Ellis if Raymond Reinhardt had permission to be in the room. Steven Ellis told that he didn't but did not want to press charges that he just came in to use the bath room. I asked Steven Ellis if there was any body else that stayed with him. Steven Ellis told me just his girlfriend and him stayed in the room.

I tested the white powder substance on the dinner plate using the narcotic identification kit G. The white powder substance tested presumptively positive for cocaine. I asked Steven Ellis if I could search his room. Steve Ellis told me no. I placed Steven Ellis into handcuffs for possession of Schedule II. I asked Steven Ellis if he was on bond for anything. Steven Ellis told me that he was arrested a couple of weeks ago for possession of Schedule II and bonded out of Adams County Jail (cr 04-9157). I search Steven Ellis to inventory his property [discussion of money seized omitted] . . . .

**Deputy Scott Perry transported Steven Ellis and Raymond Reinhardt to the substation.**

**As I walked around the desk to gather the evidence I saw the top right hand drawer slightly ajar. I looked in the drawer and saw what appeared to look like a handgun. The desk drawer was within reaching distance of where Steven Ellis was standing. I opened the drawer there was black 38 Smith & Wesson Handgun (ser# Adl 8358). As I pulled the handgun drawer a saw a plastic bag containing approximately 15 pieces of what appeared to be rock cocaine (total weight 6.52 grams) a plastic bag of a green leafy substance (total weight 25.73**

5

> **grams) that appeared to be marijuana, and a second gun Ruger 22 cal (ser#261-35484). Both guns were unloaded. The white powder substance on the plate total weight with packaging was 4.41 grams.**
>
> **All items were taken and the money seized and placed into evidence.** . . . (emphasis added).

## IV. Issue Presented

There are two issues presented. The first is whether the Court should reconsider its suppression ruling in light of the trial testimony of Officer Templeton and the continuation supplement report. If so, then the second issue presented is whether a new trial is required on the distribution charge.

## V. Analysis

Mr. Ellis' motion cites no legal authority for the relief he requests, but the Court construes his request as one for a new trial under Fed. R. Crim. P. 33, which provides in relevant part:

> (a) Defendant's Motion. Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires. . . .

When based upon newly discovered evidence, a motion under Rule 33 is disfavored and "should be granted only with great caution." *United States v. Gwathney*, 465 F.3d 1133, 1143 (10th Cir. 2006) (citation and internal quotations omitted). Unless there has been a violation of *Brady v. Maryland,* 373 U.S. 83 (1963), to obtain a new trial based upon newly discovered evidence, a defendant must show that:

> (1) the evidence was discovered after trial; (2) the failure to learn of the evidence was not caused by his own lack of diligence; (3) the new evidence is not merely impeaching; (4) the new evidence is material to the principal issues involved; and (5) the new evidence is of such a nature that in a new trial it would probably produce an

6

        acquittal.

*Gwathney*, 465 F.3d at 1144.

In essence, Mr. Ellis moves to set aside the suppression ruling based upon evidence discovered after that hearing. The Government opposes Mr. Ellis' motion, and states that the evidence relied upon by Mr. Ellis has been available to him for several years. Mr. Ellis does not contend that Officer Templeton's testimony is exculpatory. Therefore, the Court turns to the factors delineated in *Gwathney*.

Officer Templeton's testimony that is the subject of this motion was obtained at the trial, following the suppression hearing. However, the continuation supplement report had been known to Mr. Ellis prior to the suppression hearing and Officer Templeton could have been examined about its specific contents at the suppression hearing. Indeed, Mr. Ellis' counsel cross-examined Officer Templeton about the report, but did not ask any questions about the chronology of events.

The Court has some doubt, due to ambiguity both in Mr. Ellis' question and in the continuation supplement report, as to whether Officer Templeton's trial testimony actually conflicts with the evidence presented at the suppression hearing. At the suppression hearing, Officer Templeton testified that Mr. Ellis was on the balcony when the search occurred. Mr. Ellis now argues that the continuation supplement report establishes that Mr. Ellis was not present, but instead had been removed from the scene when the search occurred.

Both the question presented to Officer Templeton at trial and the report are ambiguous in this regard. Officer Templeton was asked: "And the chronology of all these events are the – 'chronology' meaning the order of things -- all are described in your continuation supplement report that we talked about; correct?" This inquiry could pertain to whether the continuation

7

report contained a chronology of events or to whether the ordering of the events in the continuation report reflected the chronology of what actually occurred.  Officer Templeton's response does not reveal what he understood the question to be.

The report also is ambiguous.  It is apparent that a number of events described in the report occurred in the order set forth. For example, questions about the powder on the plate necessarily follow observation of the powder and precede testing of it.   However, the language of the report does not indicate that all of the events described were recorded in the chronological order in which they occurred.  For example, there is no numerical ordering of the events or temporal connectors such as "then", "next" or "after".

Assuming that at the suppression hearing, the Court had been presented with the report and the cross-examination of Officer Templeton that occurred at trial, the Court would have been required to consider the report and testimony in light of Officer Templeton's otherwise clear and unrebutted testimony as to the order of events.  He unqualifiedly testified that Mr. Ellis was on the balcony when the search of the drawer occurred.  Assuming an inconsistency between the ambiguous report and the explicit, unrebutted testimony, the Court would defer to the  testimony. Therefore, even if Mr. Ellis had presented the trial testimony at the suppression hearing,  there would be no change in outcome. In the absence of a different outcome at the suppression hearing, there is no basis for a new trial.[1]

**IT IS THEREFORE ORDERED** that Defendant Ellis' Request for Reconsideration of His Suppression Motion and for New Trial **(#1043)** is **DENIED**.

---

[1] The Court notes the Tenth Circuit's recent opinion in *United States v. Walker*, _ F.3d. _, 2007 WL 259661 (10th Cir. Jan. 31, 2007), but concludes that it is inapplicable because the suppression ruling was not based upon a protective sweep search.

Dated this 1st day of February, 2007

                                    **BY THE COURT:**

                                    Marcia S. Krieger
                                    United States District Judge